Paul *v.* The Connersville and Newcastle Junction Railroad Company *et al.*

————————•————————

PAUL *v.* THE CONNERSVILLE AND NEWCASTLE JUNCTION RAILROAD COMPANY ET AL.

VENDOR AND PURCHASER.—*Railroad Track Across Land.*—*Condition Subsequent.*—A vendee who purchases land with an open, graded railway track across it, with its embankments and excavations plain to be seen, purchases with notice of whatever rights in said track there may be outstanding; and the warranty deed of his vendor cannot affect such outstanding rights in third parties; nor can he divest such rights upon a breach by the third parties of a condition subsequent contained in the grant to them by the vendor.

From the Henry Circuit Court.

*J. T. Elliott* and *W. Grose,* for appellant.

*M. L. Bundy, J. H. Mellett* and *Coombs, Miller & Bell,* for appellees.

BIDDLE, C. J. — This was an action by the appellant against the appellees. There were two paragraphs in the complaint. The first alleges, that the plaintiff is the owner of a certain tract of land therein described, situate in the county of Henry, upon which the defendant's road is laid out and located; that the defendant, with men, horses, wagons and other vehicles, has entered upon said land, and is cutting, digging and excavating the earth, and throwing up levees, etc., with the avowed purpose of making and constructing her railroad over and upon said land; that the defendant has never presented to the plaintiff any instrument showing or informing him as to the rights, or interests, or

width of land intended to be appropriated to the use of said road, nor has she, by purchase or otherwise, acquired any right of way or interest in the said land from the plaintiff, or otherwise.    Prayer for injunction to restrain the defendant until she shall comply with the constitution and laws of the State, and for other relief.

The second paragraph alleges the same facts, in substance, with the allegation that the defendant has constructed her railroad over and upon said land, and holds possession thereof without right.    Prayer for a recovery of the land, damages, and other relief.

A demurrer to the complaint was overruled, and exception taken.

The defendant answered, first, by general denial, and second, setting up, in substance, the following facts:

That on the 24th day of May, 1853, one John Wilson, who was then the owner of the land mentioned, executed to the Cincinnati, Cambridge and Chicago Short Line Railroad Company the following instrument, viz.:

"Know all men by these presents, that I, John Wilson, in consideration of the benefits and advantages of the improvement to the public and to myself, and three hundred dollars to me paid by the Cincinnati, Cambridge and Chicago Short Line Railroad Company, the receipt of which is hereby acknowledged, and to enable said company to procure subscriptions to its stock and to construct its railroad from Newcastle to the Indiana State line, do hereby grant and release to the said Cincinnati, Cambridge and Chicago Short Line Railroad Company the right of way for its said railroad, and the right to construct said railroad, according to the provisions of the charter of said company, over and through the tract of land held and owned by me in ——— township, Henry county, Indiana.    The above amount to be paid in the capital stock of said company, drawing six per cent. interest in stock until the road is completed.    The company are to make or construct two road-crossings, three cattle-guards, and one culvert on my land.

"In witness whereof, I have hereunto set my hand and seal, this 24th day of May, 1853.

(Signed,) "JOHN WILSON. [Seal.]"

It is further averred, that Wilson put the company named in the above instrument in possession of the premises, and that that company graded and prepared the road for its superstructure; that afterwards the company last mentioned consolidated with another company, known as the Cincinnati, Newcastle and Michigan Railway Company, and the consolidated company assumed the name of the Cincinnati and Chicago Railroad Company, which latter company held and occupied the premises until the 1st of May, 1860, when Walton J. Smith obtained a judgment or decree in the Henry Circuit Court for the sale of that part of the road between the town of Newcastle and the eastern line of the State, including road, road-bed, right of way, depot grounds, franchises, and all the property and privileges of whatsoever nature to the same belonging. This judgment of the Henry Circuit Court, as is shown by the finding on which it was rendered, was based upon the recovery by Smith of an ordinary judgment against the last named company for something over eighteen thousand dollars, on the 8th of November, 1859, in the Delaware Circuit Court, and the fact of the insolvency of the company. In pursuance of the judgment of the Henry Circuit Court, the road was sold out by the sheriff, and Smith became the purchaser, and received the sheriff's deed therefor. Smith afterwards, for a valuable consideration, conveyed the same to the defendant herein, the Connersville and Newcastle Junction Railroad Company, a corporation organized for the construction of a railroad from Connersville to Newcastle; and the latter company, in pursuance of its said purchase, took possession of the premises and completed the graduation of the road and laid down its superstructure, and is now operating the same as her road.

It is further alleged, that before and at the time the plain-

tiff became the owner of the tract of land mentioned in the complaint, the embankments and excavations had been constructed by the Cincinnati, Cambridge and Chicago Short Line Railroad Company, of which the plaintiff had full knowledge; which embankments, excavations and road-bed have in no way whatever been changed by the defendant.

A demurrer for want of sufficient facts was filed to the second paragraph of the answer, but was overruled, and the plaintiff excepted. Replications were filed, not necessary to be here noticed, and issues joined, which, upon trial by the court, were found for the defendants, and judgment was rendered accordingly, over a motion by the plaintiff for a new trial.

The plaintiff below appeals, and has assigned for error, amongst other things, the overruling of the demurrer to the second paragraph of answer.

We are of opinion that the facts alleged in the second paragraph of answer show that there was an outstanding right of way for a railroad across the ground in controversy, in some one, at the time Paul, the appellant, became the owner of the land, and that he had notice of the fact. Not only is such notice averred, but the embankments and excavations were actually made, and the grade established across the land, when it was purchased by Paul.

When a vendee purchases land with a common, open highway running across it, he cannot suppose that he is purchasing the exclusive right to the close of the highway as against the public; and we think when a vendee purchases land with an open graded railway track across it, with its embankments and excavations plain to be seen, that he is put upon his guard, and purchases with notice of whatever rights there may be outstanding in said railroad track.

The purchaser of real estate in the possession of a third person is bound to take notice of such person's title to the possession, whether his title be legal or equitable. *Johnston* v. *Glancy*, 4 Blackf. 94. This is a familiar principle of law, and we think the same rule should apply to a railroad track,

graded and established at the time the vendee makes his purchase. Such a track, he must know, is inconsistent with any exclusive right to the lands over which it runs.

We decide nothing as to the rights of the vendee against his vendor under covenants of seisin or warranty, as such covenants could not affect the outstanding rights in the railroad track.

The grant of John Wilson to "The Cincinnati, Cambridge and Chicago Short Line Railroad Company" shows that the title to the railroad track in controversy passed out of Wilson before Paul became the owner of the land; and other allegations in the second paragraph of answer show that the track has been in the possession of some one, adverse to both Paul and Wilson, from that time until the commencement of this suit. We think, therefore, that Paul must be held as a purchaser with notice of all the outstanding rights to the railroad track at the time he became the owner of the land.

The second paragraph of the answer does not expressly aver that Paul is the vendee of Wilson, but it shows that Paul became the owner of the land after Wilson had made the grant of the right of way to "The Cincinnati, Cambridge and Chicago Short Line Railroad Company" and put the corporation in possession of the track. Paul therefore cannot stand on any better ground than if he was the immediate vendee of Wilson, after Wilson had made the grant of the right of way in the railroad track. But supposing Paul to be the immediate vendee of Wilson, and to take all that Wilson could convey in the land after he had made the grant of the right of way to the railroad, the question arises, could Paul take advantage of any condition subsequent in the grant of Wilson, by which the estate in the lands covered by the railroad track could be divested? We do not decide that there is any such condition, either expressed or implied in the grant of Wilson, but if it should be so held, could Paul take advantage of it, after Wilson, the original grantor, had conveyed away the land? We think not. The law is firmly settled otherwise. "Nothing in action, entry or

re-entry can be granted over." Co. Lit. 214 a; 2 Bl. Com. 154–157. "Conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates." They can be reserved only to the grantor or his heirs, and no others can take advantage of a breach of them. 4 Kent Com. 129; *Hunt* v. *Beeson*, 18 Ind. 380; *Heaston* v. *The Board of Comm'rs, etc.*, 20 Ind. 398; *Rice* v. *Boston and Worcester R. R. Co.*, 12 Allen, 141; *Hooper* v. *Cummings*, 45 Maine, 359; *Underhill* v. *The Saratoga and Washington R. R. Co.*; 20 Barb. 455; *Proprietors of the Church, etc.*, v. *Grant*, 3 Gray, 142.

But the most apposite case to the one under consideration, which we have been able to find, is *Nicoll* v. *The N. Y. and Erie R. R. Co.*, 2 Kernan, 121. In that case the jury, by a special verdict, found the following facts:

"That on the 1st day of July, 1836, Nicholas A. Dederer, being the owner in fee simple of a farm situate in Blooming Grove, Orange county, executed to the Hudson and Delaware Railroad Company a deed, dated that day, whereby, in consideration of the benefits and advantages to him of the railroad proposed to be made by the company, and of one dollar to him paid by the company, he granted to such company the privilege of surveying and laying out, by its agents and engineers, through his farm or tract of land, the route and site of its road; and also granted, bargained, sold and conveyed unto the company and its successors, so much of the farm as might be selected and laid out by the company for the site of its railroad, six rods in width across the farm; provided always, and such grant was made upon the express condition, that the company would construct its railroad within the time prescribed by the act incorporating the same. That subsequently, and before the 27th of October, 1836, the company selected and laid out, for the site of its railroad through the farm, a strip of land six rods wide, extending through the farm. That on the 1st day of April, 1844, the farm formerly owned by Dederer, by virtue of sundry mesne conveyances, became the property of the plain-

tiff in fee simple, subject only to such right as the Hudson and Delaware Railroad Company then had to any portion thereof sufficient for the track of its road. That this company, on the 27th day of October, 1836, commenced the construction of its railroad, but never completed or put in operation a double or single track on any part thereof. That in pursuance of an act of the legislature, entitled an act authorizing the New York and Erie Railroad Company to construct a branch road, terminating at the village of Newburgh, passed April 8th, 1845, the Hudson and Delaware Railroad Company were authorized to, and on the 14th of September, 1846, did execute to the defendant, the New York and Erie Railroad Company, a deed, and thereby for a valuable consideration, granted, bargained, sold and conveyed to the defendant and its successors, the maps, charts, drafts, surveys and other personal property of the Hudson and Delaware Company, and all its rights, privileges, immunities and improvements, acquired under and by virtue of the original act of incorporation or of any act amending it, or in any other manner; and also all the grants, lands and real estate acquired by or ceded or conveyed to the Hudson and Delaware Company, and all its rights, title and interest to the same, and particularly the right of way, granted by Dederer to the company and its successors, by the deed from him above mentioned. That when this suit was commenced, on the 25th of February, 1847, the defendant had not completed or put in operation its branch road terminating at Newburgh, or any part of it, nor had it done so when the cause was tried. That on the 2d of December, 1846, the defendant entered upon the strip of land six rods wide, mentioned in the deed from Dederer, and laid out by the Hudson and Delaware Company through his farm as the site of its road, and ejected the plaintiff therefrom, and that the defendant was still in the possession thereof. The suit was brought to recover possession of this strip of land from the defendant."

Upon this state of facts, the New York and Erie Railroad Company recovered possession of their track. We think

the two cases are precisely the same in principle; and if Paul had in this case entered upon the track in question and ousted the railroad company, and the company had commenced the suit to recover possession from Paul, the cases would be almost exactly the same in fact, except as to the names of the parties. See, also, *Thompson* v. *Thompson*, 9 Ind. 323, and *Tallman* v. *Snow*, 35 Maine, 342.

We do not examine the title set up in the second paragraph of answer by the appellee, under the decree and sale of the railroad. Besides these facts, the paragraph shows the grant of Wilson, the original owner of the land, and the possession of his grantee under him, the grading of the track under the grant, the existence of the embankments, excavations, and grade, at the time Paul became the owner of the land, the notice of these facts to Paul, and the continued possession of the track, adverse to him, from the date of Wilson's grant to the commencement of the suit. These facts, admitted against the right of the appellant, (as he can not recover under the first paragraph of his complaint without a legal possession, and must recover under his second paragraph, if at all, by the strength of his own title, and not upon the weakness of his opponent's) show, we think, that the appellant does not stand on proper ground to question the possession of the appellee, whether the company derived any title through the decree and sale or not.

We are of opinion that the second paragraph of answer is sufficient. We need not particularly examine the questions made on overruling the demurrers to the second, third, fourth, fifth and sixth paragraphs of reply, setting up breaches of the condition subsequent. If we are right in the view we have taken of the case, the appellant could not take advantage of any such breaches for the purpose of divesting the estate in the railroad track granted originally by John Wilson. See authorities, *supra*. These paragraphs were insufficient, and the demurrers to them correctly sustained.

The facts alleged in the complaint were put in issue by the first paragraph of answer in general denial, and the facts

in the second paragraph of answer were put in issue by a reply in general denial. Upon these issues, the cause was tried· upon its merits, and we think the evidence sustains the finding for the appellees.

The judgment below is affirmed, with costs.