[S. F. No. 14190. In Bank.—April 27, 1933.]

OCEAN SHORE RAILROAD COMPANY (a Corporation), Respondent, v. SPRING VALLEY WATER COMPANY (a Corporation) et al., Defendants; LAKE MERCED GOLF AND COUNTRY CLUB (a Corporation), Appellant.

Brownstone & Goodman and Louis E. Goodman for Appellant.

Henry E. Monroe and Julia M. Easley for Respondent.

WASTE, C. J.—Plaintiff brought this action to quiet its title to a certain right-of-way. At the conclusion of the trial

it was found that plaintiff had abandoned the same. Judgment was accordingly entered denying relief. Upon appeal it was held that the evidence did not warrant a finding of abandonment. The judgment was therefore reversed. (*Ocean Shore R. Co.* v. *Spring Valley Water Co.,* 87 Cal. App. 188 [262 Pac. 53].)

Prior to the second trial of the action the defendant golf club, pursuant to stipulation, amended its answer so as to specially plead that it was a *bona fide* purchaser for value without notice of plaintiff's right. It was further stipulated that all of the evidence given at the first trial was to be considered as given at the second trial. None of the defendants, except the golf club, introduced any further evidence. The golf club offered evidence touching the special defense above mentioned. Findings were made adverse to the defendant water company on the issue of abandonment and against the golf club on its special defense. The golf club alone appealed. The sole question presented for determination has to do with the sufficiency of the evidence to support the finding that the defendant golf club was not a *bona fide* purchaser for value without notice of plaintiff's right-of-way.

It appears that in 1909 the defendant water company conveyed to the plaintiff's predecessor in interest a surface right-of-way for railroad purposes. In the latter part of the year 1920, or early in 1921, the plaintiff discontinued the operation of its railroad over said right-of-way and removed all of its tracks and equipment therefrom. In October, 1921, the defendant golf club commenced negotiations with the defendant water company for the purchase of a tract of land over which ran plaintiff's right-of-way. The contract for the purchase of this land was executed by the defendant golf club in March, 1922, and $10,000 was paid on account of the purchase price. The golf club thereupon entered into possession and improved the property. The contract of purchase contained no reference to plaintiff's right-of-way and the deed conveying the right-of-way was not recorded until approximately one month after the defendant golf club had executed such contract and paid a portion of the purchase price.

There is testimony to the effect that at the time the defendant golf club was negotiating for the purchase of the

property, portions of plaintiff's right-of-way were being plowed and planted by farmers. Counsel for the defendant golf club testified that while such negotiations were pending, there remained over a gulch in one part of the property a portion of a trestle over which the railroad had formerly passed. The rails and the ends had been removed from this trestle. It is conceded that the trestle was plainly visible to the eye. That the golf club was without actual notice or knowledge of plaintiff's rights in the property and had expended approximately $30,000 before learning thereof, may be admitted. This is not determinative of the case, however.

An unrecorded instrument is valid as between the parties thereto and those who have notice thereof. (Civ. Code, sec. 1217.) Every person having actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, is charged with constructive notice of the fact itself in all cases in which by prosecuting such inquiry he might have learned such fact. (Civ. Code, sec. 19.) Examination of the evidence satisfies us that the defendant golf club, while lacking actual knowledge of plaintiff's easement when negotiating for the purchase of the property, had actual notice of circumstances sufficient to put it upon inquiry which, if prosecuted, would have disclosed plaintiff's interest and right in the property. This being so, the defendant golf club is chargeable with constructive knowledge of the existence of plaintiff's right-of-way. Its title to the property is, therefore, subject to plaintiff's easement.

The physical condition of the property, as disclosed by the evidence adduced by the golf club, was such as to indicate the existence of a right-of-way thereon. The trestle above mentioned, together with certain gradings and cuts on the property, of which the defendant golf club through its representative admittedly had knowledge, so indicated. The assumption that the railroad had been abandoned does not help the defendant's cause. It has been held there was no abandonment. (*Ocean Shore R. Co.* v. *Spring Valley Water Co., supra.*) Inquiry by the defendant golf club would have led to the ascertainment of this fact. In *Chicago & E. I. R. R.* v. *Wright,* 153 Ill. 307 [38 N. E.

1062], a case somewhat similar to the present one, the following appears.:

"It appears from the evidence that in 1872, and soon after the execution of the deed for the right-of-way, the Danville, Tuscola & Western Railroad Company constructed a grade across section 20 on the strip of land 60 feet wide, and extended such grade across the adjoining lands both east and west of said section. No further work was done on this grade or on the railroad, from and after the year 1872, until subsequent to the time that appellee made his purchase. When he bought, his grantor was in possession of the whole section, the strip in question being fenced in with the other parts of the section, and the whole used as a pasture for cattle. However, the railroad grade was clearly defined, and remained intact. It is admitted that appellee knew of the grade. He states in his own testimony that at the time that he bought he saw the grade there, and saw the grade on the adjoining property on both sides of the section; and that there was a grade all the way through there. He also states that he made inquiries of a Mr. Eckhart, who had lived on the land, but did not ask anything about what title the railroad company had; and that Mr. Eckhart said that the old company was dead, and the road would never be built. . . . It is difficult to lay down a general rule as to what facts are sufficient to charge a party with notice, or put him upon inquiry. It is safe to say, however, that if the information received is of such a character that it would arouse the suspicions of an ordinarily prudent person, and suggest to him a source of information which, by the exercise of ordinary and reasonable diligence, would, upon inquiry and investigation, lead him to the fact that a prior conveyance had been made, then he will be deemed chargeable with knowledge of such conveyance. In *Crawford* v. *Chicago, B. & Q. R. Co.*, 112 Ill. 314, it was said that the rule is that if anything apprises a purchaser or encumbrancer that a particular person claims the property, or an interest in it, the former must pursue that notice to its source, and that, failing to do so, he will be charged with all he would have learned had he pursued and investigated the matter to the full extent to which it led. In *Indiana, B. & W. R. Co.* v. *McBroom*, 114 Ind. 198 [15 N. E. 831], the appellee knew at the time he bought

the land that the grade for a railroad track was constructed thereon, and this was held to be sufficient to put him upon inquiry. And it was there said: 'A person who is about to purchase land upon which a grade for a railroad is constructed is warned that there is some claim of right, and if he fails to make proper inquiry as to the nature of the claim he buys at his peril.' In the case at bar the grade was a plain, unmistakable monument, which notified the whole world that a railroad company had entered upon the land and erected its roadbed thereon, and the legal presumption arose that it had done so under some claim of right. . . . It must therefore be held that the title that he procured to the strip of ground in question is in subordination to the title that is vested in appellant to its right-of-way.''

*Indiana, B. & W. R. Co.* v. *McBroom,* 114 Ind. 198 [15 N. E. 831], declares: "The appellee, in his testimony, says: 'At the time that Wood conveyed to me there was a strip cut through the timber, and there were ditches. I had no doubt but this work was grade for a railroad.' At the time he bought the land he knew that the grade for a railroad track was constructed, and this was sufficient to put him upon inquiry. (*Paul* v. *Connersville & N. J. R. Co.,* 51 Ind. 527; *Jeffersonville, M. & I. R. Co.* v. *Oyler,* 60 Ind. 383.) A person who is about to purchase land upon which a grade for a railroad is constructed, is warned that there is some claim of right, and if he fails to make proper inquiry as to the nature of the claim, he buys at his peril. A man cannot buy property where there are facts known to him sufficient to put him upon inquiry, and hold it free from prior claims or equities of which due inquiry would have given him information. (*Wilson* v. *Hunter,* 30 Ind. 472; *Singer* v. *Scheible,* 109 Ind. 575 [10 N. E. 616].) This familiar and long-settled rule is thus well stated in a recent case: 'A party in possession of certain information will be charged with a knowledge of the facts which an inquiry suggested by such information, prosecuted with due diligence, would have disclosed to him.' ''

*Smith* v. *Worn,* 93 Cal. 206 [28 Pac. 944], cited by the appellant, is distinguishable on its facts from the instant case. It therein appears that "there was nothing on the land indicating in any way the existence of any road over

it''. In the present case, as already indicated, there remained in existence physical characteristics of a right-of-way sufficient to suggest to a prudent person an inquiry in regard thereto. The cited case concludes, even in the face of nonuser extending over a period of years, that the owner of the servient estate had not been misled by any *acts* of the owner of the dominant estate unequivocally indicating a clear intent to abandon. Examination of the record in the case now before us satisfies us that the defendant golf club was not misled to its prejudice by any *acts* of the plaintiff clearly evidencing an intent to abandon.

In conclusion, we repeat that the defendant golf club is not a *bona fide* purchaser for value without notice of plaintiff's easement. Prior to executing the contract of purchase or advancing any money thereunder, it had knowledge of facts sufficient to indicate the existence, at one time or another, of a right-of-way across the land. Reasonable inquiry would have disclosed plaintiff's interest in the property and dissipated any theory of abandonment. Having failed to pursue the inquiry suggested by the facts of which it had knowledge, it necessarily follows that the defendant golf club acted at its peril and its title to the property is therefore subject to plaintiff's easement therein.

For the foregoing reasons, the judgment of the court below quieting plaintiff's title to such easement must be, and it is hereby, affirmed.

Curtis, J., Langdon, J., Shenk, J., Thompson, J., and Seawell, J., concurred.